F. Matthew Smith
Law Offices of F. Matthew Smith, LLC
P.O. Box 505352
Saipan, MP 96950
Phone: 670-234-7455
Fax: 234-7256

Attorney for Defendant NMC

FILED
Clerk
District Court

DEC 13 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN (JACK) ANGELLO,<br><br>        Plaintiff,<br>vs.<br><br>NORTHERN MARIANAS COLLEGE,<br><br>        Defendant. | Civil Action No. 03-0014<br><br>**BRIEF ON DISPUTED ISSUE OF AVAILABILITY OF JURY TRIAL** |

In accordance with LR 16.2CJ(e)(7)(a)(1), Defendant Northern Marianas College ("NMC") hereby files a brief on a recently realized and disputed issue of significance and law: *the availability of a jury trial in this matter*. This brief is supported by pleadings and files in this matter as well as the following supporting facts and authority:

    1.    On May 21, 2003, Plaintiff John (Jack) Angello ("Angello") filed his initial complaint in this matter he included in the caption the words: "Request for Jury Trial". See Complaint and Request for Jury Trial (filed March 21, 2003).

    2.    In the time since he filed that initial complaint, Angello amended his complaint three times. In none of the amended complaints did Angello include or reassert his request for a jury trial.

*NMC Brief -- Page 1 of 3*

ORIGINAL

*See* Amended Complaint (filed August 15, 2003); *see also* Second Amended Complaint (filed November 7, 2003); *and see* Third Amended Complaint (filed February 19, 2004).

3. Earlier in the Fall, counsel for the parties discussed whether or not this was going to be a jury or a bench trial; and, at the September 7, 2005, status conference, when the question was posed by NMC counsel, this Court responded that the request for jury trial language did not have to be included in the amended complaints as long as it was in the initial complaint.

4. Notwithstanding that response, as trial preparation commenced, and focus turned to the two (2) remaining counts of the complaint (*i.e.*, Count I: Sex Discrimination under 42 U.S.C. § 2000e-2; and Count II: Retaliation under 42 U.S.C. § 2000e-3), it became clear that the last two counts allege violations of, and seek relief under, Title VII. *See* Third Amended Complaint (filed February 19, 2004) *in conjunction with* Order Granting Defendants' Motion to Dismiss Portions of Third Amended Complaint (entered April 15, 2004); *and see* Plaintiff's Proposed Preliminary Statement to the Jury by the Court (filed December 13, 2005)("If proved, these alleged discriminatory and retaliatory actions by NMC are in violation of Title VII of federal law.").

5. Under the enforcement provisions of Title VII, only certain categories of relief and certain remedies are available to plaintiffs in Title VII cases. *See* 42 U.S.C. § 2000e-5(g). These include injunctions, affirmative action, and other forms of equitable relief. *Id.* But they do not include any relief that can be granted by a jury. *Id.*

6. The Ninth Circuit recognized this limitation and restriction when it held:

> Jury trials are not available in Title VII cases because the remedies available are equitable in nature.[1]

---

[1] In that same case, the Ninth Circuit also held that "[e]motional and punitive damages do not constitute equitable relief or back pay, the categories statutorily authorized."

*Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981). For the convenience of this Court and Angello, copies of the *Shah* case and 42 U.S.C. § 2000e-5(g) are attached to this brief. In sum, because Angello's only remaining claims are Title VII claims, a jury trial is not available in this matter.

7. Having earlier questioned whether or not this was going to be a jury trial, NMC again raises this disputed and significant issue of law with this Court on the grounds that federal law limits the possible remedies in Title VII actions to equitable relief that can only be granted by a judge.

8. For all of the foregoing reasons, NMC brings this matter before this Court in accordance with the Local Rules of the NMI District Court; and NMC asks that this matter proceed as a bench trial and not as a jury trial.

Respectfully submitted this    12-13-05    .

F. Matthew Smith
Attorney for Defendant NMC

642 F.2d 268, *; 1981 U.S. App. LEXIS 20293, **;
27 Fair Empl. Prac. Cas. (BNA) 772; 25 Empl. Prac. Dec. (CCH) P31,769

LEXSEE 642 F2D 268

GUNVANT D. SHAH, Appellant, vs. MT. ZION HOSPITAL AND MEDICAL CENTER, a non-profit corporation, Appellee.

No. 79-4271

UNITED STATES COURT OF APPEALS, NINTH CIRCUIT

642 F.2d 268; 1981 U.S. App. LEXIS 20293; 27 Fair Empl. Prac. Cas. (BNA) 772; 25 Empl. Prac. Dec. (CCH) P31,769

January 13, 1981, Argued
February 11, 1981, Decided

**SUBSEQUENT HISTORY:** [**1]

As Amended March 30, 1981.

**PRIOR HISTORY:** Appeal from the U.S. District Court for the Northern District of California.

**COUNSEL:**

Curtis G. Oler, San Francisco, Cal., on briefs, for appellant.

Michael J. Loeb, Crosby, Heafey, Roach & May, Oakland, Cal., on briefs, for appellee.

**JUDGES:**

Before SKOPIL and BOOCHEVER, Circuit Judges, and TAYLOR n*, Senior District Judge.

* The Honorable Fred M. Taylor, Senior United States District Judge, Idaho, sitting by designation.

**OPINIONBY:**

BOOCHEVER

**OPINION:**

[*269]

Gunvant Shah sued Mt. Zion Hospital and Medical Center (Mt. Zion), claiming that the conditions of his employment and his termination after a short period of employment [*270] were discriminatory. Prior to trial, the district court granted partial summary judgment for Mt. Zion on Shah's *42 U.S.C. § 1981* claim, and dismissed his requests for a jury trial, emotional distress damages, and punitive damages. At trial, the court dismissed his Title VII *(42 U.S.C. § 2000e* et seq.) claims. Shah appeals from the pretrial orders and trial dismissal. We affirm.

FACTUAL BACKGROUND

Mt. Zion hired Shah, an East Indian male, as a payroll clerk. The hospital hired him subject to a written [**2] ninety-day probationary period. Shah alleges that his co-workers, both female Filipinos, treated him in a discriminatory fashion by failing to train him adequately, and by speaking to him in Tagalog, their native language. Shah does not understand Tagalog. Shah further claims that this conduct was facilitated by his immediate supervisor, a male Filipino, who not only failed to remedy the situation but actually encouraged it.

Mt. Zion terminated Shah pursuant to the probationary agreement, because of his inability to get along with employees in several departments of the hospital. Shah contends that the termination was discriminatory, and also in retaliation for his complaints regarding discrimination. After the Equal Employment Opportunity Commission (EEOC) found no reasonable cause to believe that Mt. Zion discriminated against Shah, he filed suit in the district court requesting declaratory relief, injunctive relief, and damages. Shah contends that Mt. Zion discriminated against him because of his race, color, national origin, religion and sex. n1

n1. Shah apparently bases the sex discrimination claim on his allegation that his male supervisor preferred female employees. Shah has not described his religious affiliation, or the basis for his claim of religious discrimination.

[**3]

Prior to trial, Mt. Zion moved to dismiss Shah's race, color, and religious discrimination claims under Title VII

642 F.2d 268, *; 1981 U.S. App. LEXIS 20293, **;
27 Fair Empl. Prac. Cas. (BNA) 772; 25 Empl. Prac. Dec. (CCH) P31,769

because they were not raised in his EEOC claim. Mt. Zion also moved to dismiss the request for a jury trial, emotional distress and punitive damages as unavailable under Title VII. Finally, Mt. Zion moved to dismiss the section 1981 claim because Shah was alleging national origin discrimination in that claim and not racial discrimination. The court granted all of these motions in its order of October 21, 1977. After Shah amended his section 1981 complaint to allege that he was of the Black race, Mt. Zion requested partial summary judgment on the section 1981 claim, and moved to strike the other repetitive claims. In its order of December 14, 1977, the court granted partial summary judgment against Shah on his section 1981 claim and granted Mt. Zion's motions to strike the requests for a jury trial, punitive and emotional distress damages.

Because of the pretrial orders, when Shah's case finally came to trial in February 1979, the only theories he could proceed under were sex and national origin discrimination under Title VII. After Shah and two hospital employees [**4] testified, Mt. Zion moved for dismissal under *Federal Rule of Civil Procedure 41(b)*. The court granted the motion, finding that Shah had not established a prima facie case of discrimination.

On appeal, Shah challenges all of the district court rulings, raising a number of issues. We find no merit to Shah's arguments. n2

> n2. Mt. Zion has requested an award of appellate attorney fees as the "prevailing party," pursuant to *42 U.S.C. § 2000e-5(k)*. We agree with Mt. Zion that Shah's appeal borders on the frivolous, and we also recognize that a prevailing defendant can recover attorney fees for a Title VII defense. *Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978)*. This court has recognized, however, that the policy behind awarding attorney fees in a Title VII case is much weaker when the prevailing party is the defendant. *Silver v. KCA, Inc., 586 F.2d 138, 143 (9th Cir. 1978)*. We do not believe that the policy behind Title VII will be furthered by granting appellate attorney fees to Mt. Zion in this case, since Shah's appeal is not entirely "frivolous, unreasonable, or without foundation," Christiansburg, id., and we deny Mt. Zion's request.

[**5]

[*271] I. DISMISSAL UNDER RULE 41(b)

*Federal Rule of Civil Procedure 41(b)* allows a defendant to move for dismissal after the plaintiff has presented his evidence. In evaluating a 41(b) motion the court acts as a trier of fact, and a dismissal acts as an adjudication on the merits. *Rutledge v. Electric Hose & Rubber Co., 511 F.2d 668, 676 (9th Cir. 1975)*. Factual findings of the trial court in a Title VII case will not be overturned on review unless clearly erroneous. *Golden v. Local 55 of the International Association of Firefighters, 633 F.2d 817 at 820 (9th Cir., 1980)*. The evidence introduced at trial fully supports the trial court determination that Shah did not make a prima facie case of discriminatory training or retaliatory discharge.

To establish a prima facie case of discriminatory training, Shah was required to show that he was treated differently from other employees, and that Mt. Zion was aware of the discrimination and failed to remedy it. n3 The only evidence Shah points to as showing disparate treatment is the testimony of his successor, Woolsey. Her testimony, however, was introduced by Mt. Zion to show equivalent treatment. The substance of her testimony [**6] is that her co-workers provided training. Shah himself testified that he received the personnel manual, received assistance from his co-workers, and received written instructions in English. The trial court's determination that Shah did not establish disparate treatment is not clearly erroneous. Furthermore, Shah did not demonstrate that Mt. Zion knew of and failed to remedy any training deficiencies.

> n3. Title VII prohibits an employer from refusing to hire, discharging, or otherwise discriminating against any individual on the basis of race, color, religion, sex, or national origin. *42 U.S.C. § 2000e-2(a)*. Discrimination in training programs is specifically prohibited. *42 U.S.C. § 2000e-2(d)*. The Supreme Court discussed the ordinary elements of a Title VII prima facie case in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)*, but noted that the elements will vary from case to case. *Id. at 802 n. 13, 93 S. Ct. at 1824 n. 13*. In the instant case, the trial court specifically instructed Shah on his burden to show both disparate treatment, and Mt. Zion's knowledge of any discrimination.

[**7]

Shah's claim of retaliatory discharge was not established either. See *42 U.S.C. § 2000e-3(a)*. Because Shah's complaints regarding alleged discriminatory treatment did not occur until after he was discharged, there was no "causal link" between his protests and the adverse employer action. *Gunther v. County of Washington, 623 F.2d 1303, 1314 (9th Cir. 1979)*, cert. granted, *449 U.S. 950, 101 S. Ct. 352, 66 L. Ed. 2d 213 (1980)*. Furthermore, it is doubtful whether the conduct Shah complained about, notably the "harassment" by co-workers, was violative of Title VII as required for a

Case 1:03-cv-00014    Document 114    Filed 12/13/2005    Page 6 of 8

Page 3

642 F.2d 268, \*; 1981 U.S. App. LEXIS 20293, \*\*;
27 Fair Empl. Prac. Cas. (BNA) 772; 25 Empl. Prac. Dec. (CCH) P31,769

showing of retaliatory discharge. *Silver v. KCA, Inc., 586 F.2d 138, 141-42 (9th Cir. 1978).*

In its pretrial statement of the issues, the court limited trial to Shah's claims of discriminatory training and retaliatory discharge. Shah did not object to this limitation, and the district court's findings of fact and conclusions of law only addressed the training and retaliation claims discussed above. On appeal, Shah has for the first time attempted to litigate his additional claims of harassment and discriminatory termination. Because these issues were not raised at trial, Shah is precluded from raising [\*\*8] them on appeal. *Inland Cities Express v. Diamond National Corporation, 524 F.2d 753, 755 (9th Cir. 1975).*

II. PRETRIAL DISMISSAL OF TITLE VII RACE, COLOR, AND RELIGION CLAIMS

Prior to instituting suit, Shah filed an EEOC complaint alleging sex and national origin discrimination. At trial Shah attempted to expand his Title VII action to include race, color and religious discrimination. The district court lacked subject matter jurisdiction over these additional claims because Shah failed to raise them before the EEOC. See *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 589 F.2d 974, 976 (9th Cir. 1978); Fed.R.Civ.P. 12(b)(1).* We held that a federal court has jurisdiction over claims "reasonably related to the allegations of the EEOC charge." *Oubichon* [\*272] *v. North American Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973).* But, in Oubichon, the court found a chain of discriminatory acts all arising under the common theory of race discrimination. By contrast, Shah relies on the same employer actions to demonstrate discrimination under three theories never investigated by the EEOC. Therefore the court below properly dismissed these claims. *EEOC v. Bailey Co., 563* [\*\*9] *F.2d 439, 447 (6th Cir. 1977),* cert. denied, *435 U.S. 915, 98 S. Ct. 1468, 55 L. Ed. 2d 506 (1978); Saad v. Burns International Security Services, Inc., 456 F. Supp. 33, 36 (D.D.C.1978).*

III. PARTIAL SUMMARY JUDGMENT ON SHAH'S § 1981 CLAIM

The trial judge granted partial summary judgment against Shah on his section 1981 claim because, apparently based on personal observation, he agreed with the EEOC's listing of Shah as Caucasian. Section 1981 only prohibits racial discrimination. n4 Shah contends that by amending his complaint to describe himself as a "Black East Indian male of African descent," he raised a material issue of fact as to his race, precluding summary judgment. Even assuming there is merit to Shah's claim, he did not file any counter-affidavits to Mt. Zion's motion, choosing instead to rest on his pleadings. Because Shah did not present any factual support for the assertion that he is "Black," partial summary judgment against him was proper and is affirmed. *Fed.R.Civ.P. 56(e); Securities & Exchange Commission v. Murphy, 626 F.2d 633, 640 (9th Cir. 1980).*

> n4. *42 U.S.C. § 1981* provides that all people in the United States have the same right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...." The statute is directed at racial discrimination, not other forms of discrimination, and thus has been interpreted differently from Title VII. *Runyon v. McCrary, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1975).*

[\*\*10]
IV. PRETRIAL DISMISSAL OF SHAH'S REQUEST FOR A JURY, EMOTIONAL DISTRESS DAMAGES, AND PUNITIVE DAMAGES

Jury trials are not available in Title VII cases because the remedies available are equitable in nature. *42 U.S.C. § 2000e-5(g); Slack v. Havens, 522 F.2d 1091, 1094 (9th Cir. 1975).* See *Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 375 n. 19, 99 S. Ct. 2345, 2350, 60 L. Ed. 2d 957 (1979).* Shah's argument to the contrary is without support.

The great weight of authority denies support for Shah's request for emotional distress and punitive damages under Title VII. *42 U.S.C. § 2000e-5(g)* provides the following remedies for intentionally engaging in unlawful employment practices:

> the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

Emotional and punitive damages do not constitute equitable relief or back pay, the categories statutorily authorized. See, e. g., *Miller v. Texas State* [\*\*11] *Board of Barber Examiners, 615 F.2d 650, 654 (5th Cir. 1980),* cert. denied, *449 U.S. 891, 101 S. Ct. 249, 66 L. Ed. 2d 117 (1980); DeGrace v. Rumsfeld, 614 F.2d 796, 808 (1st Cir. 1980); Altman v. Stevens Fashion Fabrics, 441 F. Supp. 1318, 1320 (N.D.Cal.1977).* See *Novotny, 442 U.S. at 374-75, 99 S. Ct. at 2350-51.* In an appropriate case, compensatory and punitive damages

642 F.2d 268, *; 1981 U.S. App. LEXIS 20293, **;
27 Fair Empl. Prac. Cas. (BNA) 772; 25 Empl. Prac. Dec. (CCH) P31,769

may be available under *42 U.S.C. § 1981, Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460, 95 S. Ct. 1716, 1720, 44 L. Ed. 2d 295 (1975),* but because Shah failed to make out a 1981 claim, we need not address the issue.

The Judgment of the district court is AFFIRMED.

[left column, partially cut off:]

ty, the Commis-
a government,
notify the person
ch notice a civil
t the charge (A)
rge was filed by
e charge alleges
practice. Upon
es as the court
ich complainant
ithout the pay-
the court may,
y General in a
olitical subdivi-
that the case is
rt may, in its
y days pending
subsections (c)
sion to obtain

I the Commis-
l, that prompt
his Act [title],
ving a govern-
ring an action
al disposition
order granting
nce with rule
the duty of a
ion to assign
se such cases

es court of a
have jurisdic-
et seq.]. Such
ate in which
ommitted, in
vant to such
al district in
the alleged
ound within
the judicial
purposes of
the judicial
in all cases
brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) **Injunctions; affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders.** If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) [42 USCS § 2000e-3(a)].

(h) **Provisions of 29 USCS §§ 101 et seq. not applicable to civil actions for prevention of unlawful practices.** The provisions of the Act entitled "An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes," approved March 23, 1932 (29 U. S. C. 101–115), shall not apply with respect to civil actions brought under this section.

(i) **Proceedings by Commission to compel compliance with judicial orders.** In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.