# Northern Marianas College
# Office of Human Resources

## QUALIFICATION EVALUATION WORKSHEET

Name _____ JACK ANGELLO _____     Appl /__/  EE /__/

Vacancy / Position _____     EA / PC # _____

I. **Comparative Quantitative Summary: Position vs. Applicant:**

|  | Position Requirements | Applicant Qualifications (Full & Partial) | Comments |
|---|---|---|---|
| Education: |  | ED.D 96 / MA 89 | Univ. of Southern California / SJSU (Educ. Instruc. Tech) |
| Experience: |  | 6.3 yrs - PST / * 6 yrs. PST Educ. Admin (8 yrs total w/ PSS) |  |
| Others: |  |  |  |
| Numerical Comparison |  |  |  |

(Substitution)* Educational Administration = 8 yrs including PSS - 2 yrs PSS 1989 1990-
Post-Secondary Educational Administration = 6.3 yrs = 1996-2002
Post-Secondary Teaching experience = 6.3 yrs.

II. **Placement:**

a. Meets Qualifications Requirements?  Yes /__/     No. /__/

b. If yes, exceeds by how many years / months:  Yrs ____ Mos ____

c. If no to #1 above, lacks how many years / months:  Yrs ____ Mos ____

d. Salary (Pl and step) qualified for:

_____ 11/27/02        _____ 11-27-02
Reviewing Personnel Specialist    Date     Approving Personnel Supervisor    Date

PLAINTIFF'S EXHIBIT 99

_____ Angello 11/27/02

Educational Administration

1989 - VP @ MHS = 1 yr
1990-1992 - Principal @ Tinian HS = partial = 1 yr

PST Educational Administration
1996 - 2002 = 6

PS Teaching Experience

1983 - Eastern Oregon State w/ Governor's Office = (0-6)
1988 - IT Lab Asst / Instructor @ SJSU = (0,-6)
1990 - 2002 - Coast Guard = (2.5 yrs) (Partial 25% credit employed FT @ Tinian/NMC
1990-1992 - Adjunct NMC Instructor (partial) = (1 yr)
1998-1999 - UOG/NMC = 6 mos. (0-6)
2000 - 2002 - NMC Co-Teacher Vocational = (1-0)
  Total = 6.3 yrs

NOTE: 1998-2000 NMC Instructor @ Adult School = 2/2 = 1 PST
To be checked w/ HRO



## IN THE NORTHERN MARIANAS COLLEGE
## EMPLOYEE APPEALS COMMITTEE

| | |
|---|---|
| IN RE THE MATTER OF: | ) NMC EMPLOYEE APPEAL |
| | ) NO. 01-001 |
| JACK ANGELLO, | ) |
| | ) DECISION |
| Appellant. | ) |
| | ) |

### PROCEDURAL HISTORY

On March 9, 2001, Dr. Jack Angello submitted a list of grievances pursuant to Board Policy 4360, "Employee Grievances Not Related to Suspension or Termination." After several communications between Dr. Angello and the Northern Marianas College (NMC), the matter was set for a hearing before this committee on August 27, 2002. The appellant was asked to succinctly state the issues on his appeal. On the date of the hearing, appellant's attorney, Mr. Danilo T. Aguilar, submitted the requested statement of issues. The issues, as stated by appellant, are as follows:

> 1. Failure of NMC to implement the provisions of Public Law 9-53 concerning the establishment of an NMC Vocational & Technical Institute with a separate budget of 25% of the fees collected under Public Law 5-32 (Nonresident Workers Act). Dr. Angello seeks to have NMC commit the budget for the Vocational Education Department as required under the law.
>
> 2. The lack of support from NMC administration as to programs, classes, and budgetary support for the Vocational Education Department. Dr. Angello seeks to have NMC schedule all classes requested by the Vocational Education Department.
>
> 3. Reimbursement of costs incurred for students of Vocational Education Department by Dr. Angello. Dr. Angello paid for supplies and also made partial payments for tuition for students to keep up the interest in the audio/visual program.



PLAINTIFF'S EXHIBIT 100

4. Compensation or reimbursement of medical costs incurred by Dr. Angello and usage of annual and sick leave as a result of job-related stress. Dr. Angello has suffered a considerable amount of stress in attempting to run the Vocational Education Department with almost no budget and having to deal with the NMC Administration's cancellation of Vocational Education courses. Dr. Angello seeks approximately $18,000.00 with regard to this claim for lost annual and sick leave.

5. Evaluation of Dr. Angello's experience by the NMC administration, for the purpose of determining qualifications for positions within NMC, has not been fair and accurate. Dr. Angello was deemed unqualified for several positions that he applied for because of inadequate teaching experience, despite his employment record stretching back to 1982 with significant teaching experience that should been considered to make him an eligible candidate.

The hearing before the Appeals Committee was held on August 27, 2002 in the Conference Room of the Human Resources Department of NMC. Members of the Appeals Committee present were Regent. Vincent J. Seman, Chair, Regent Kimberlyn K. Hinds, Regent Maggie Olopai-Taitano, Alfred Johnson and Lynda Rowe. Legal counsel for the committee, Jesus C. Borja, from the Law Offices of Vicente T. Salas, was also present. The appellant, Dr. Jack Angello, and his legal counsel, Danilo T. Aguilar, were present. Dr. Barbara Moir, Dr. Kenneth Wright and Ms. Elsie Dela Cruz were present for NMC.

Dr. Angello argued his position, with Mr. Aguilar saying a few words. Members of the committee and its legal counsel then asked questions. Dr. Wright then interjected and asked that he be allowed to speak. He noted that he had just arrived to assume his position as the President of NMC. He suggested that he be given time to meet with Dr. Angello to see if a resolution of his concerns could be arrived at without going through the Appeals Committee. Dr. Angelo agreed. The Appeals Committee then recessed until the parties notified it of the result of their meeting. The

2

meeting was unsuccessful. The Human Resources Office of NMC re-scheduled the hearing for November 26, 2002, at 3:00 p.m. in the Board of Regents Conference Room.

Present at the hearing were Regent Vincent J. Seman, Chair, Regent Maggie Olopai-Taitano, Alfred Johnson and Lynda Rowe. Legal counsel for the committee, Jesus C. Borja, from the Law Offices of Vicente T. Salas, was also present. The appellant, Dr. Jack Angello, and his legal counsel, Danilo T. Aguilar, were present. Dr. Kenneth Wright and Ms. Elsie Dela Cruz were present for NMC.

At the hearing, Dr. Angello presented to the Appeals Committee a November 26, 2002 letter stating the issues that he sought to be resolved. They were:

1. The list of grievances noted in the 3/9/01 memo to the NMC President.

2. The delay of the 3/9/01 hearing date, and the lack of adjudication of my EEO complaint.

3. The 8/27/02 hearing issues, which were conditionally suspended in "good faith":
    a. 3/9/01 list of grievances (implementation of P.L. 9-53, etc.)
    b. EEO complaint filed against V.P. Barbara Moir
    c. Post Secondary teacher experience issue (number of years)
    d. President and Dean of Continuing Education applications.[1]

---

[1] The November 26, 2002 letter stated a fourth issue, "9/24/02 termination without cause (Redundant position? No enrollees?)." The committee noted to Dr. Angello that it had not received his grievance regarding this matter. Dr. Angello produced his letter of appeal. The Appeals Committee gave Dr. Angello two alternatives to handle this additional issue. One, he could re-schedule the hearing to give NMC and the committee time to review his new grievance. Second, he could argue his appeal at this hearing, but with the understanding that both he and NMC would be given time to submit written arguments on their positions. Dr. Angello agreed to the second alternative. While the committee heard the arguments of both parties, the committee gave both parties until January 15, 2003 to submit any written arguments on their position, if any. The committee and NMC accepted the January 15, 2003 date because of Mr. Aguilar's schedule. A party would have another 15 days to respond to a filed written argument. The committee would then issue its decision.

3

The Chair of the Appeals Committee asked appellant and his counsel what their position was regarding the fact that Dr. Angello was no longer an employee of NMC. He was specifically asked if the Appeals Committee had jurisdiction to hear Dr. Angello's grievances in view of the fact that the Appeals Committee was only authorized to hear grievances of employees. Mr. Aguilar responded that he and his client felt that Items 3.c. and d. were matters that still had to be addressed by the Appeals Committee. Regarding Items 1, 2 and 3.a. and b. he had no argument to present but left the matter up to the Appeals Committee. After some discussion, Dr. Angelo and his counsel agreed to postpone resolution of Items 3.c. and d. until Dr. Angello first met with the Human Resources Office.

## ISSUE PRESENTED[2]

Whether this committee has jurisdiction to hear this appeal pursuant to Board Policies?

## FINDINGS OF FACT

Dr. Jack Angello was an employee of NMC when he filed his 3/09/01 grievances. Dr. Angello filed his 3/09/01 grievances based on Board Policy 4360, entitled "Employee Grievances not Related to Suspension or Termination." On September 24, 2002, his employment contract was terminated by NMC under the "without cause" provision of his employment contract. He was given the required 60 days' notice. The sixty days expired on November 24, 2002.

Board Policy 4365 A states that "The Employee Appeals Committee's primary function is to hear and adjudicate cases presented to it <u>in matters of employee's suspensions, termination and</u>

---

[2] The Appeals Committee in its deliberation decided that the only issue on this appeal was whether it had jurisdiction to hear this matter. As a result, all the issues stated by Dr. Angello in his November 26, 2002 letter, i.e., Items 1, 2, 3.a. and b., would not be addressed in this decision.

4

grievances." (Emphasis added.) Board Policy 4360 specifically states "The Board of Regents recognizes the appeals procedures for the <u>employees</u> of the college to adjudicate <u>employee grievances</u> as defined by its appeals procedures and approved by the Board of Regents." (Emphases added.)

### CONCLUSION OF LAW

Based on the above findings of fact, we conclude that this Appeals Committee lacks jurisdiction to hear and determine the grievances filed by Dr. Jack Angello in this appeal. Dr. Angello must find another avenue to resolve the issues that he has raised in this appeal.

### DISCUSSION

Board Policies 4360 and 4365 are clear. This Appeals Committee has been established to hear grievances filed by <u>employees</u> of the college. It cannot hear grievances filed by non-employees. The Board of Regents has not given such authority and power to this committee. Any decision it made in matters filed by non-employees would be of no force and effect. This committee cannot and should act in a futile manner.

The committee wishes to emphasize the its decision is based on the fact that Dr. Angello filed his grievances in this appeal on the Board policy dealing with non-suspension and non-termination issues. The committee's decision does not apply to appeals based on suspension or termination.

### DECISION

Because of our conclusion of law, we have decided that this committee does not have

5

jurisdiction to hear and decide Dr. Jack Angello's grievances filed in this appeal. He must seek other avenues to resolve the grievances stated in this appeal.

Dated: December ____, 2002

_____
Vincent J. Seman
Chair

_____
Maggie Olopai-Taitano
Member

_____
Alfred Johnson
Member

_____
Lynda Rowe
Member



# Northern Marianas College
### Office of the President

P.O. Box 501250, Saipan, MP 96950
World Wide Web Site: www.nmcnet.edu
Phone: (670) 234-5498/99
Fax: (670) 234-1270



January 14, 2003

The Honorable Stanley T. Torres
Congressman
Thirteenth Northern Marianas
 Commonwealth Legislature
P.O. Box 500610
Saipan, MP 96950

Dear Congressman Torres:

   This is written to take responsibility and to apologize for a delay in getting the responses to you regarding the two legal opinions you recently requested. I had requested our legal counsel to look into the two questions regarding our Vocational Institute and the College Lab School respectively. He did look into those questions and timely delivered his opinion. However, in reviewing his opinions I observed that they were slightly off point. It turns out that the cause was a lack of clarity in what I was requesting.

   I have sent him the attached email that I believe will clarify the matter. Since he has already investigated the laws involved, it should not take him long to respond to the clarified questions. I apologize again for the delay.

Sincerely,

Kenneth E. Wright, Ph.D.
President

xc:  NMC Legal Counsel
     Chairman, Board of Regents



PLAINTIFF'S EXHIBIT 101

A Land Grant Institution accredited by the Accrediting Commission for Community and Junior Colleges

# LAW OFFICES OF
## VICENTE T. SALAS
UIU BUILDING, SECOND FLOOR
SAN JOSE, SAIPAN, MP 96950

**VICENTE T. SALAS**

F. Matthew Smith
Jesus C. Borja - Of Counsel

Mailing Address:
P.O. Box 501309
Saipan, MP 96950-1309
Phones: (670) 234-7455
(670) 234-7427
Fax: (670) 234-7256
e-mail: vts@itecnmi.com

<u>**VIA PERSONAL DELIVERY AND FAX**</u>
234-1270

January 15, 2003

TO: Dr. Kenneth E. Wright
President

FROM: Jesus C. Borja
Legal Counsel

SUBJECT: Additional Comments to Laboratory School and Vocational, Occupational and Technical Training Center and Professional Development Institute

In our January 13, 2003 discussion, you stated that the January 10, 2003 opinion of this office did not address two specific issues that you were concerned about. As such, this will supplement our January 10, 2003 opinion and address those two concerns.

## LABORATORY SCHOOL

You ask if NMC could terminate the operation of a laboratory school if PSS agreed to establish and operate one.

As I stated in our January 10, 2003 opinion, NMC is not obligated under the statute to operate a laboratory school. The statute merely authorizes NMC to establish, administer and operate

JAN 2003 RECEIVED



PLAINTIFF'S EXHIBIT 102

such a school. NMC can cease operations of such a school even if PSS does not establish and operate one. However, if PSS wishes to establish a laboratory school and NMC wishes to cooperate in its establishment and operation, NMC can do so. There is nothing in the law that would prohibit such cooperation. I assume, for purposes of this discussion, that PSS has the legal authority to establish and operate such a school.

### VOCATIONAL, OCCUPATIONAL AND TECHNICAL TRAINING CENTER AND PROFESSIONAL DEVELOPMENT INSTITUTE

You ask whether the appointment of a Director of Vocational & Technical Education, with four academic divisions, would be in compliance with Senate Joint Resolution No. 13-6. Such actions, plus existing programs, would comply with the joint resolution.

You have stated that you plan to appoint a Director of Vocational & Technical Education. Also, you plan to have four academic divisions according to occupational skills involved, i.e., Human Services, Technology, Health Technologies, and Business. Additionally, the college already offers courses in these areas and grants certificates or degrees upon successful completion.

The first "Be It Resolved" clause of the joint resolution specifically states that such an institute be implemented and organized. The appointment of a director (even if such a director had other duties), establishment of four academic divisions, plus the facts that the college already offers courses in these areas and grants certificates or degrees upon successful completion would be the required implementation and organization of such an institute.

If you have any questions on the above, please let us know.

Thank you.

*Jesus C. Borja*
Jesus C. Borja

2



# Northern Marianas College
### Office of the President

P.O. Box 501250, Saipan, MP 96950
World Wide Web Site: www.nmcnet.edu
Phone: (670) 234-5498/99
Fax: (670) 234-1270

February 6, 2003

Honorable Representatives and Senators
Thirteenth Northern Marianas
   Commonwealth Legislature
Honorable Jesus P. Mafnas Memorial Building
Capitol Hill, Saipan MP 96950

Subject: Comments on House Bill#13-229.

Dear Honorable Representatives and Senators:

On February 4, 2003, NMC officials met and discussed the proposed House Bill 13-229 and concern in reference to the proposed legislation. Let me summarize the discussion, provide you with the critique of the bill as written, and then suggest a possible solution that could be beneficial to everyone affected by the passage of the bill. There are several issues concerning the bill that that require review and further clarification.

First of all, we're already doing what the bill wants us to do: as requested by last year's resolution, we have formed and are operating a Vocational and Technical Institute: Jack Sablan is the Director. Under Jack's supervision are the vocational programs, that is, the carpentry and technical trades courses that Lino Santos teaches and which run in Tinian and Rota, the Pacific Rim Academy film courses, and all the other professional programs, such as School of Education, Nursing, Business and Hospitality, and the like. Under his supervision, we intend to introduce two new vocational programs in each of the four academic divisions for a total of eight new programs by the Fall of 2004. Tony Guerrero and his Community Development program coordinate the young adult and high school 2+2 programs. In this program are extension courses for professionals, off-island baccalaureate and masters programs, the PSS 2+2 programs, continuing education courses, GED, Adult Basic Education, and the Adult School programs. In other words, the language of the bill in Section 2 doesn't add anything to the College that isn't already there.

What it does do, however, is mandate that 25% of the 10-66 funding be used to operate that Vocational and Technical Institute (VTI). Given, however, that NMC currently

A Land Grant Institution accredited by the Accrediting Commission for Community and Jun[ior Colleges] and by the Senior Commission for Colleges and Universities of the Western Association of Schoo[ls and Colleges]



PLAINTIFF'S EXHIBIT 103

Comments on HB 13-229
February 6, 2003
Page 2 of 3

receives only about 25% of the 10-66 funding, this bill would effectively cut off all funding for the School of Education, the Nursing Program, the Business and Hospitality Program, and computer technology. It would also, by forcing existing VocTech programs into a narrow box, prevent us from using funding from 10-66 to create such new programs, such as Electronics Technology, Applied Automotive Technology, Architectural Technology, Automotive Collision Repair, Automotive Service Technology, Computer-Aided Drafting and Design Technology, Construction Technology, Culinary Arts, Dental Hygiene, Dietetic Technician, Emergency Medical Technician, Fire Science, Horticulture, Legal Assistant, OSHA technician Para-veterinarian, Refrigeration and Air Conditioning Technology, Respiratory Care, and others that we're planning on creating. As mentioned above, we have mandated that each of four academic divisions will introduce two new vocational programs, such as in the foregoing list, by Fall 2004. However, by mandating that all of 10-66 spending go towards the narrowly defined VTI, one must consider the consequences. Does the CNMI really want to take away funding for teachers and nurses in order to invest in what it hopes will be a surge somewhere of minimum wage job seekers wanting training in carpentry and plumbing? Somehow we don't think so. We can't imagine our School of Education, Nursing, Business, or Hospitality students, their parents or families, or our constituents from the Public School System, CHC, or HANMI reacting very well to the news.

The bill also, in Section 3, mandates, rather than authorizes, that the College operate a Lab School. President Wright and Vice President Algaier had an enlightening meeting on this very topic with Representatives Daniel Quitugua, Pedro Castro, William Torres, and Ray Tebuteb of the House Education Committee in November 2002. Again, operating a Lab School is something we are already doing, and the operation of the College Lab School (CLS) is something that we see to be in the best interest of our School of Education program. Thus, mandating its operation is unnecessary. In fact, because of the interest in the legislature to keep us doing what we like to do, we put a request into next year's budget request for funds to run the lab school without charging tuition. Eliminating tuition could help us open enrollment to more natural demographics of the island. However, the time may come when the need for a Lab School is no more. As the School of Education fills the Public School System with its graduates, we put more and more highly qualified model teachers into the system; when we reach a saturation of talent, the need for a CLS at NMC may become moot. At that time, it would only be proper for the School of Education and the institution to evaluate its on-going needs and put its limited revenue and resources into the areas that would best serve the program and its students.

The biggest problem that the bill would create, however, both in Section 2 and in Section 3, would be with our accrediting body, the Western Association of Schools and Colleges

Comments on HB 13-229
February 6, 2003
Page 3 of 3

(WASC). As you know, WASC is highly concerned that the educational institutions it accredits remain autonomous. This bill, however, gets to the very heart of institutional micromanagement. In section 2, it tells the college on which programs to spend its funds, how much to spend on the programs, and how to create the college's organizational chart. In Section 3, it tells the college how to best run its academic programs and how to create its academic curriculum. This would be considered gross interference. It may also be unconstitutional. We're not constitutional scholars, but we believe the CNMI Constitution authorizes a Board of Regents to hire and supervise a President for the College, who in turn has authority to lead the institution on establishing policy, procedures, and curriculum. Having a bill circumvent all that may be troubling.

In any case, as we said at the outset, we do have a proposal that could be win-win. We would suggest your good bodies consider the re-introduction of last year's bill 12-361. That bill passed both the House and the Senate and was not signed into law only because of a minor technicality. It contained a codification conflict that the Governor's staff recognized; in other words, it was mis-addressed. As stated in our proposed revision to last year's submission strongly supports all of the programs we mentioned above, to quote: "The money reserved for this account *(that portion which is earmarked for NMC)* shall be used only to fund the Northern Marianas College Nursing Program; Work Experience Training Program; Business, Hospitality, and Computer Technology Program; Vocational Education Program; Community Human Resource Development Program; School of Education; and any other such training and education programs designed specifically to address the purpose of this Act and the professional development needs of the people of the Commonwealth." This seems to us exactly what Representative Torres wants to obtain for the good of the CNMI. If this bill were again passed, all of you would certainly come off as supporters of educational advancement and the growth of an education industry in the CNMI. And while we don't have a copy of that bill in digital format, we are attaching our comments and proposed revisions from the last time it was introduced.

We thank you all for the opportunity to comment on the proposed bill. If you need any further assistance from us, on this or any other matter, please do not hesitate to ask.

Best regards,

Kenneth E. Wright, Ph.D.
President

cc: NMC Leadership Team

THIRTEENTH NORTHERN MARIANAS COMMONWEALTH LEGISLATURE

SESSION, 2002                               H. B. NO. 13-229

A BILL FOR AN ACT

To amend 3 CMC Section 1305(b)(2) and 1306 of Public Law No. 9-53; and for other purposes.

BE IT ENACTED BY THE THIRTEENTH NORTHERN MARIANAS COMMONWEALTH LEGISLATURE:

1  Section 1. **Findings.** The Legislature finds that the President of the Northern
2  Marianas College is planning to terminate the Laboratory School for Teacher Training.
3  The Legislature authorized the College to establish and operate the Laboratory School for
4  the purpose of ensuring the proper training for our own local and talented future teachers,
5  who would fill the teachers shortages in the CNMI Public School System. The
6  Legislature also finds that the President of the Northern Marianas College is continually
7  ignoring the mandate of Public Law 9-53 and Senate Joint Resolution 13-6, which
8  provides for the establishment of a Vocational and Technical Training Institute within the
9  Northern Marianas College. The creation of this institute will address the mandate of our
10 CNMI Constitution and the concerns of the Legislature to provide adequate training
11 opportunities for our local residents.
12  Section 2. **Amendments.** 3 CMC Section 1305(b)(2) is amended to read as
13 follows:
14      "(2) To provide for the residents of the Commonwealth higher education,
15      community service programs, adult <u>school</u> and adult continuing education, <u>young</u>
16      <u>adult (high school 2+ 2 programs)</u> and <u>older</u> adult vocational and technical
17      education, professional training programs for the improvement of private
18      employee skills, and training programs for Government employees. ~~To~~ <u>The</u>
19      <u>Northern Marianas College shall</u> establish, <u>administrator and operate</u> a vocational,


PLAINTIFF'S EXHIBIT 104

HOUSE BILL NO. 13-229

Prefiled: 12/04/02

Date: _____

Introduced By: _____
Rep. Stanley T. Torres

Reviewed for Legal Sufficiency by:

_____
House Legal Counsel

Page 3