RECEIVED FEB 1 3 2003

# IN THE NORTHERN MARIANAS COLLEGE
# EMPLOYEE APPEALS COMMITTEE

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | NMC EMPLOYEE APPEAL |
| | ) | NO. 02-004 |
| JACK ANGELLO, | ) | |
| | ) | **DECISION** |
| Appellant. | ) | |
| | ) | |

## PROCEDURAL HISTORY

On September 24, 2002, Dr. Kenneth Wright, the President of Northern Marianas College (NMC) notified Dr. Jack Angello that his employment at NMC was being terminated as of November 23, 2002. Dr. Wright stated in his letter of termination that he was exercising his right under Part VII.C of Dr. Angello's employment contract.[1] Exercising his right under such provision in his contract, Dr. Angello filed his notice of appeal on October 9, 2002. His notice of appeal did not state the reason or reasons for his appeal. It merely stated that he was appealing his "termination without cause ...."

At the November 26, 2002 hearing before the Appeals Committee in the Conference Room of

---

[1] Part VII.C of Dr. Jack Angello's employment contract states as follows:

    C.  Termination without Cause
        The President may terminate a faculty without cause
        upon written notice of 60 days in advance of termination
        of employment. However, a faculty may appeal the
        decision to the Employee Appeals Committee. (See
        Board of Regents Policy/Administrative Procedure:
        Resources, No. 4365.)

PLAINTIFF'S EXHIBIT 105

the Human Resources Department of NMC, Dr. Angello argued his case.2 Members of the Appeals Committee present were Regent Vincent J. Seman, Chair, Regent Maggie Olopai-Taitano, Alfred Johnson and Lynda Rowe. Legal counsel for the committee, Jesus C. Borja, from the Law Offices of Vicente T. Salas, was also present. The appellant, Dr. Jack Angello, and his legal counsel, Danilo T. Aguilar, were present. Dr. Kenneth Wright and Ms. Elsie Dela Cruz were present for NMC

Dr. Angello handed a letter, dated November 26, 2002, addressed to the Chair of the committee stating the issues that he thought were involved. It was in this letter that the committee had some idea of the bases of his appeal. His letter, in pertinent part, stated the following:

    4.    9/24/02 termination without cause (Redundant position? No enrollees?)
        a.    Retaliation (EEOC Charge)
        b.    Civil Service protections (OPM/CSC/EEO claims)
        c.    9/24/02 reasoning is flawed (PRA/Lino/Lt. Gov. letters & petition) SJR 13-6, P.L. 9-53, 1 CMC 8131, WIA MOA, and PRA disbursement.

Dr. Angello and Mr. Aguilar argued Dr. Angello's position. Members of the committee and its legal counsel then asked questions. While the committee heard the arguments of both parties, the committee gave both parties until January 15, 2003 to submit any written arguments on their position, if any. The committee and NMC accepted the January 15, 2003 date because of Mr. Aguilar's schedule. A party would have another 15 days to respond to a filed written argument. The committee would then issue its decision.

Dr. Angello submitted his written argument, labeled "Response," on January 14, 2003.3

---

2 The Appeals Committee was not aware of Dr. Angello's appeal of his employment termination until the November 26, 2002 hearing. However, the committee permitted Dr. Angello to argue his appeal and Dr. Wright to respond to his arguments.
3 In his "Response," Dr. Angello phrased the issues as "Whether Angello can be

2

NMC did not file a written argument. Instead, it filed only a response to Dr. Angello's written arguments, dated January 22, 2003. Dr. Angello then filed what he labeled "Supplemental Filing Response."[4]

On February 6, 2003, the committee met to deliberate on the appeal and to issue its decision. The members present were Regent Vincent J. Seman, Chair, Regent Maggie Olopai-Taitano, Regent Kimberlyn King-Hinds[5], Alfred Johnson and Lynda Rowe. Legal counsel for the committee, Jesus C Borja, from the Law Offices of Vicente T. Salas, and Ms. Elsie Dela Cruz were also present.

## ISSUE PRESENTED

The only issue before this committee is whether the employment contract of Dr. Angello was properly terminated.

## FINDINGS OF FACT

Dr. Kenneth Wright, President of NMC, terminated Dr. Jack Angello's employment at NMC under the "without cause" provision of his employment contract on September 24, 2002. He was given 60 days' notice. The sixty days expired on November 24, 2002.

Dr. Angello's notice of termination was one of eleven issued by Dr. Wright on September 24, 2002.

---

granted his due process in the grievances he timely presented, and whether he should be reinstated to his NMC employment, pursuant to the appeal rights of BOR policy 4365 and/or CNMI Personnel Service System Rules & Regulations, Parts III D & E."
4 Dr. Angello did not seek permission from the committee to submit a supplemental response. However, at the time the committee met, it decided to accept Dr. Angello's "Supplemental Filing Response."
5 Regent Kimberlyn King-Hinds was reappointed and confirmed as a regent after the November 26, 2002 hearing. Board of Regents Chair, Vincent J. Seman reappointed her to the Appeals Committee.

3

Dr. Angello's employment contract, Part VII.C, states that it is the President that can terminate the employment contract. Dr. Angello signed his contract.

Board Policy 4020, Part VII.C, is the source for Part VII.C of the employment contract. The contract provision is taken verbatim from the policy. This policy is still in effect.

Board Policy 1009, Part L, states that "The President's specific duties and responsibilities include the following: ... L. Appointing and terminating staff and faculty consistent with applicable Human Resources rules and regulations." This policy is still in effect.

## CONCLUSION OF LAW

Based on the above findings of fact, we conclude that Dr. Angello's employment contract was properly terminated pursuant to his contract and Board Policies.

## DISCUSSION

No evidence or argument was given to the committee as to why the contract provision or Board Policies were invalid. There was no evidence that Dr. Angello was forced to sign his contract, or that he was mislead into signing it. There was no evidence that the termination was not pursuant to applicable Human Resources rules and regulations.

The "without cause" provision means what it says. The President may terminate the employment contract of the affected employee without any reason. As such, Dr. Angello's stated reasons in his November 26, 2002 letter are irrelevant, i.e., that Dr. Wright's reasoning are flawed. Dr. Wright clearly stated that he was terminating Dr. Angello's employment contract under the "without cause" provision. He did not need to state any reason. The fact that he did state his reasons

does not change the fact that he specifically stated he was exercising his duty under the "without cause" provision of the contract.

Dr. Angello argued that the President had no authority to fire him since the enabling statute of NMC states that the Board of Regents had this duty. He cites to 3 CMC 1316(n). The committee agrees with Dr. Angello that this particular statutory provision states what he says it states. However, 3 CMC 1316(r) further states that "By the authority and power vested in the board by the Commonwealth Constitution and this chapter, the board may delegate such power and authority to any officer, employee or committee as the board may designate by adopted rules." The committee determines that Board Policy 4020, Part VII.C and Board Policy 1009, Part L, are the delegation of such power by the Board to the President. Therefore, the President, Dr. Kenneth Wright had the authority to terminate the employment contract of Dr. Jack Angello. As such, the Committee need not address Board Policy 4365 since the committee's decision is to affirm NMC's termination of Dr. Angello's employment contract.

Furthermore, the committee is perplexed by Dr. Angello's argument that the President had no authority to terminate his employment contract when his employment contract specifically states that it is the President that can do so. He signed his contract. In fact, he lived with the provisions of his contract for several years prior to his termination and took advantage of the terms of his contract. He never complained about the other provisions of his contract. He never complained that the previous President never had the authority to sign his contract and hire him. Now that his position is being terminated, he complains that it is an invalid contract. The committee believes that this is not right.

However, the committee bases its decision on what the contract provides and what existing Board Policies allow.

The committee has seen no evidence that the termination of Dr. Angello's employment contract was a retaliatory act. The evidence that the committee is aware of is that Dr. Angello was one of eleven NMC employees who were given a termination notice on the same day. The committee cannot believe that an act to terminate the employment contracts of eleven people with different positions would be retaliatory.

Dr. Angello argues that his due process rights were violated when this committee refused to hear his appeal regarding his other issues. See Decision of December 16, 2002. This is an attempt by Dr. Angello to bring this matter up again. The committee has decided this issue and will not address it again. However, the committee wishes to state that it did not deny, and is not denying, Dr. Angello his due process rights, if any. The committee's decision specifically stated that "Dr. Angello must find another avenue to resolve the issues that he has raised in this appeal."

Dr. Angello lastly argues that he should be reinstated because the rules and regulations of the Civil Service System were not complied with.

The committee will not address this issue other than to say that NMC has been in existence for many years without the involvement of the Civil Service Commission. NMC has been taking the position that it is outside the jurisdiction of the Civil Service Commission. The Board of Regents takes this position. This committee cannot disregard the stated position of NMC. Until a court of competent jurisdiction decides otherwise, the committee determines that the Civil Service

Commission has no jurisdiction over the personnel of NMC.

## DECISION

Because of our conclusion of law, we decide that Dr. Jack Angello's employment contract ~~was validly and properly terminated by NMC.~~

Dated: February 14th, 2003

_____
Vincent J. Seman
Chair

_____
Kimberlyn King-Hinds
Member

_____
Maggie Olopai-Taitano
Member

_____
Alfred Johnson
Member

_____
Lynda Rowe
Member

# EXECUTIVE SUMMARY

Northern Marianas College - Facts and Circumstances Surrounding the Termination of Employees of Northern Marianas College

Report No. AR-03-03 February 19, 2003

**Summary**

This report presents the Office of the Public Auditor's (OPA) evaluation of the facts and circumstances surrounding the termination of 11[1] employees[2] of the Northern Marianas College (NMC) as part of a reorganization announced on September 23, 2002. The evaluation's objectives were to determine: (1) NMC's basis for terminating the 11 individuals; (2) whether NMC adhered to applicable laws, NMC policies, and employment contract terms in terminating the 11 employees; and (3) the fiscal impact of the terminations.

Our review of documentation and responses from structured interviews with NMC Regents, staff, faculty, terminated individuals and the NMC President showed that the NMC Board of Regents (the Board) entrusted the NMC President (the President) with broad authority to conduct a reorganization and was very supportive of the way it was conducted. OPA found that the President conducted the reorganization quickly, but most individuals exclusive of Board members perceived they had little, if any, input into the reorganization. Most respondents, other than Board members, disagreed with the manner in which the reorganization was conducted indicating it was insensitive to employees being terminated or reassigned. OPA obtained no direct evidence showing that employees were personally targeted for termination. However, many NMC officials and employees suspected that the opinions of a few key individuals may have helped the President make his decisions.

The documentation supporting the President's reorganization was less than thorough as it was only accompanied by the new organization chart and a draft memorandum to the Board that did not adequately specify what was to be done and when, how it was to be implemented, and who were to be affected. While the Board informally acknowledged the President's decision on the reorganization, it: (a) did not vote on the reorganization even though the previous organization chart was included as Board policy and a Board vote was needed to change this policy, (b) did not meet as a full board monthly as required by Board policy, and (c) did not provide Board minutes in a timely manner on a matter of concern to the community. Also, the President chose not to follow reduction-in-force (RIF) procedures even though NMC Policy 4358 includes "program restructuring" as a condition warranting compliance with RIF procedures.

The President failed to adequately involve NMC staff in the reorganization process contra to one of the college accreditation standards[3] to be followed. The President terminated employees by using the "without clause" provisions of the employment contracts. Contracts for six of the 11 terminated employees had already expired when they were given termination notices. NMC continued to pay terminated employees although these employees were instructed to discontinue providing services. NMC filled four position vacancies without advertising them contra to Board policy. Also, NMC failed to comply with the Administrative Procedures Act requiring it to publish its regulations in the Commonwealth Code. Also, after one of the 11 terminated employees appealed his termination, the Civil Service Commission issued an opinion stating that NMC employees are covered by the Civil Service Act.

---

[1] In December 2002, the NMC President terminated two additional employees as part of his continued reorganizing of NMC. Consequently, OPA also briefly addressed this matter.

[2] In accordance with statutory restrictions in the Auditing and Ethics Acts, names of individuals are not disclosed in this report.

[3] In June of 1985, NMC was granted accreditation by the Western Association of Schools and Colleges (WASC), the accrediting commission for community and junior colleges. That accreditation was reaffirmed in 1990 and again in 1996. Obtaining and maintaining accreditation is important because it enables students of the institution eligible for federal financial aid, and guarantees that the academic credits which students earn at college can be transferred to, and be accepted at four year institutions. Accreditation Standard IV, address encourage broad employee participation when programs, practices, and services are to be improved, and calls for colleges to implement a written policy providing for faculty, staff, administrator, and student participation in decision-making processes.


PLAINTIFF'S EXHIBIT 106

John (Jack) Angello
P.O. Box 501149
Saipan, MP 96950
Phone: 235-8691
Pro Se

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

JOHN (JACK) ANGELLO, )
         Plaintiff, )
         v. )
KENNETH WRIGHT, personally )
and in his capacity as the President )
of the Northern Marianas College; )
VINCENT J. SEMAN, personally )
and in his capacity as Chairman of, )
and representing the Northern )
Marianas College's Board of )
Regents; and the NORTHERN )
MARIANAS COLLEGE, )
         Defendants. )
)

Civil Action No. 03-0014

**DECLARATION**

HONORABLE DAVID WISEMAN
Presiding Designated Judge

I, Leonard G. Wolf, Jr., do hereby declare the following:

1. I have resided on and off in the CNMI for the past thirteen years and have businesses located on Saipan Island, including a current joint venture film & TV program with the Northern Marianas College (NMC).

2. In the summer of 1998, I met with Dr. Jack Angello, who was the Director of Vocational Trades Education at NMC.

PLAINTIFF'S EXHIBIT 107

3. We discussed a joint venture between the NMC and my newly-formed film and TV company on Saipan, and we called it the NMC/Pacific Rim Academy.

4. The NMC/Pacific Rim Academy would offer training in film & TV production and post production. The joint venture would initially target CNMI residents, in order to create a local film & TV workforce in the CNMI that is a popular film & TV production area.

5. The second phase of the NMC/Pacific Rim Academy would target international students from the Pacific Rim areas (Japan, Korea, China, etc.). We arranged for audio/visual/computer and English language instruction, housing, food, extracurricular activities, etc., as a complete package that was being marketed in the Pacific Rim international areas.

6. I spent nearly one hundred thousand dollars in personnel, equipment and supplies in 1998-2000, and NMC, through the extensive planning, direction, and professional administration of Dr. Jack Angello, we created the NMC/Pacific Rim Academy Program at NMC.

7. The NMC/Pacific Rim Academy program was approved by the NMC President (Agnes McPhetres) and the Board of Regents in 1998/99, and it had the backing of the Governor's Office, the Legislature, and the Mayor's Office. A joint venture lease agreement was signed in October of 1999 between NMC and the Pacific Rim Academy. However, both in 1999 and 2000 the program was unexpectedly cancelled by NMC upper management (Vice President B. Moir) for unexplained reasons.

8. In the fall of 2001, I initiated breach of contract legal action, after Dr. Angello had earlier filed a NMC grievance against Vice President Moir for not

supporting the program. President McPhetres had already retired, and our initial program support was being derailed and not supported.

9. After negotiating with former President Sablan of NMC in the fall of 2001, the NMC/Pacific Rim Academy was finally implemented the spring of 2002. We had full capacity training classes; however, the support for the program from NMC upper management was still a problem.

10. In the summer of 2002, I met with the new NMC president, Dr. Kenneth Wright, and Dr. Jack Angello, in order to discuss the future of the NMC/Pacific Rim Academy program. President Wright seemed lukewarm to the program and advised Dr. Angello that he had no budget for Angello's vocational programs.

11. Dr. Angello received permission from President Wright to lobby the CNMI Governor's Office for funding, and he was successful. The Pacific Rim program was planned on a reasonable budget, utilizing local and international resources, and on September 24, 2002, Dr. Angello received a $25,000.00 transfer of funds from Lt. Governor Diego Benavente. However, that very same day Dr. Angello was suddenly terminated from NMC.

12. A few months later I met with President Wright and he told me that he had a new and exciting program for NMC and international students, and that my film & TV program was an essential part of the program. President Wright listed ten steps of this new program, called the Pacific Gateway Program, and I told him all these steps had already been planned and mostly implemented by Dr. Angello and myself in our NMC/Pacific Rim Academy Program, which was now renamed the Pacific Gateway Program.

3

13. As time went on, Dr. Wright seemed indifferent to the previous efforts of Dr. Angello, and remarked that the recently departed NMC Vice President Dr. Moir really disliked Dr. Angello and his vocational programs. I believe that there was a jealously factor involved with NMC's upper management and Dr. Angello, because he was successful in initially implementing the NMC/Pacific Rim Academy program without a designated budget. I know for a fact that he spent a couple of thousand dollars of his own money to make the program be successful.

14. I firmly believe NMC retaliated against Dr. Angello for fighting for his vocational programs and the Pacific Rim Academy ("Pacific Gateway") project, which is now considered a top priority for NMC.

I declare the foregoing is true and correct under the penalty of perjury and I am competent to testify to this declaration in a court of law.

Dated: 7-11-03

Leonard G. Wolf, Jr.



# Northern Marianas College
## Human Resources Office
P.O. Box 501250 • Saipan, MP 96950 • Tel: (670) 234-5498
Fax: (670) 234-1270 • Web site: www.nmcnet.edu

August 11, 2003

Lenice DLR. Kapileo
P.O. Box 501616
Saipan, MP 96950

Re: Transmittal of EAC Decision

Dear Ms. Kapileo:

Enclosed is the decision of the Employee Appeals Committee regarding your grievance hearing, which was held on July 16th, 2003.

If you have any questions please contact the Director, Human Resources Office at 234-5498 ext.1018.

Sincerely,

Elsie M. Dela Cruz
Director of Human Resources

Cc: President

*************************************************************************

Received by: _____     8/13/03
             Lenice DLR. Kapileo            Date

A Land Grant Institution Accredited by the Accrediting Commission for Community and Junior Colleges and the Accrediting Commission for Senior Colleges and Universities of the Western Association of Schools and Colleges



## IN THE NORTHERN MARIANAS COLLEGE
## EMPLOYEE APPEALS COMMITTEE

| | |
|---|---|
| IN RE THE MATTER OF: ) | NMC EMPLOYEE APPEAL |
| ) | NO. 03-003 |
| LENICE DLR. KAPILEO, ) | |
| ) | **DECISION** |
| Appellant. ) | |
| ) | |

### BACKGROUND

On June 9, 2003, pursuant to Policy Number 4354, the President of Northern Marianas College (hereafter NMC), Dr. Kenneth E. Wright, sent a letter to Ms. Lenice DLR. Kapileo, (hereafter Ms. Kapileo) advising that her employment contract with NMC would not be renewed.. Ms. Kapileo was, at the time, an Administrative Assistant II with Auxiliary Services of NMC. Her employment contract stated that the termination date was July 8, 2003. On July 3, 2003, Ms. Kapileo filed this appeal in the Employee Appeals Committee alleging that the decision not to renew her employment contract deprived her of her "rights to basic due process."

The hearing before the Committee was held on July 16, 2003 in the Conference Room of the Board of Regents at NMC. Members of the Committee present were Mr. Vincent Seman, Chair, Ms. Kimberlyn K. Hinds, Ms. Maggie Olopai-Taitano, Mr. Edward Lieberman and Ms. Jeanette Villagomez. Legal counsel for the Committee, Jesus C. Borja, from the Law Offices of Vicente T. Salas, was also present. The appellant, Ms. Lenice DLR. Kapileo, was present. Dr. Kenneth E.


PLAINTIFF'S EXHIBIT 109

Wright and Mr. David S. Atalig were present for NMC.

Ms. Kapileo was allowed to argue her appeal first. NMC was then allowed to present its side. Thereafter, members of the Committee asked questions.

## ISSUE PRESENTED

Whether the non-renewal of Ms. Lenice DLR. Kapileo's employment contract on July 8, 2003 violated Ms. Kapileo's rights to basic due process?

## FINDINGS OF FACT

Based upon the record, the presentations and answers provided at the hearing, we find as follows:

1. Ms. Lenice DLR. Kapileo was an employee at NMC since July 16, 1989.

2. Ms. Lenice DLR. Kapileo received satisfactory performance evaluations from her initial employment to 1997. She received poor evaluations in 1998, 1999 and 2000 due to her poor attendance record and unauthorized extended lunches and breaks.1 She was transferred once during this period of time due to her poor attendance record. Her evaluation improved in 2001 to satisfactory. There was no evaluation in 2002. In 2003, she received oral warnings regarding her poor attendance and unauthorized extended lunches and breaks and was transferred once more

---

1 Uncontroverted evidence was presented showing that Ms. Kapileo would advise her office that she was not coming to the office on that day. Upon her return to the office, she would fill-out a leave application (sick or annual) for the time she did not come to work. Her supervisors would reprimand her but approve the leave application.
    Regarding lunches and breaks, it was uncontroverted, also, that Ms. Kapileo would some times take one and a half to two hours of lunchtime. Morning and

because of these. On April 12, 2003, her supervisor, Mr. David S. Atalig, sent her a written notice that adverse action would be taken against her if she continued her "lack of attendance and tardiness."

3. Although orally advised that she should stop her poor attendance practices, her supervisors always approved her late applications for leave.

4. Ms. Lenice DLR. Kapileo's July 9, 2001 employment contract stated that it would terminate on July 8, 2003.

5. Ms. Lenice DLR. Kapileo's July 9, 2001 employment contract ended July 8, 2003.

6. NMC Policy 4354 requires NMC to give its employees a thirty-day notice of non-renewal if it decides not to renew an employee's contract.

7. Ms. Kapileo received the required notice of non-renewal from NMC.

## CONCLUSION OF LAW

Based on the above findings of fact, we conclude that NMC complied with NMC Policy 4354 in not renewing Ms. Lenice DLR. Kapileo's July 9, 2001 employment contract. NMC did not deprive Ms. Kapileo of her due process rights.[2]

## DISCUSSION

The record is clear that ample evidence exists of Ms. Kapileo's poor attendance record and her unauthorized extended lunches and breaks. The record is also clear that although Ms. Kapileo

---

afternoon breaks would often be more than the allowed fifteen minutes.

2 At the hearing, Ms. Kapileo admitted that her due process rights had not been violated. She stated that she did not understand the letter that she received from Dr. Kenneth E. Wright.

3

was orally advised against her poor attendance practices and unauthorized extended lunches and breaks, her immediate supervisors would always approve her late applications for leave covering those absences and not document the unauthorized extended lunches and breaks. While the Committee concurs with Dr. Kenneth E. Wright's decision not to renew Ms. Kapileo's employment contract, the Committee is greatly disturbed by NMC's practice of approving Ms. Kapileo's late application for leave and not documenting and taking appropriate action regarding the unauthorized extended lunches and breaks. The Committee acknowledges that the oral warnings were proper. However, the approvals of the late applications for leave and lack of written adverse action regarding the unauthorized extended lunches and breaks were not. These practices send a confusing message to employees, as it did in this particular case to Ms. Kapileo. Employees become confused as to whether their poor attendance and unauthorized extended lunches and breaks are really improper. On the one hand, they receive an oral warning that they are improper. Yet, on the other hand, their late applications for leaves covering the same absences are approved and no written adverse action is taken for the unauthorized extended lunches and breaks. The Committee strongly suggests that NMC stop such practices. If employees have problems with their attendance, taking of extended lunchtime and breaks, then they should be informed in no uncertain terms that they are wrong. Subsequent applications for leave to cover the absence should **not** be approved. Unauthorized extended lunches and breaks should be documented and the appropriate adverse action taken.

### DECISION

Because of our conclusion of law, we decide that NMC complied with its policies and with

4

due process in not renewing Ms. Lenice DLR. Kapileo's employment contract. The decision of Dr. Kenneth E. Wright is **AFFIRMED**.

Date: August 8, 2003

_____
Vincent Seman
Chair

_____
Kimberlyn K. Hinds
Member

_____
Maggie Olopai-Taitano
Member

_____
Edward Lieberman
Member

_____
Jeanette Villagomez
Member