FILED
Clerk
District Court

OCT - 6 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN (JACK) ANGELLO, ) | Civil Action No. 03-0014 |
| Plaintiff ) | |
| v. ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER GRANT OF FED.R.CIV.P. 52(c) MOTION BY DEFENDANT |
| NORTHERN MARIANAS COLLEGE, ) | |
| Defendant ) | |

THIS MATTER came before the court on October 2-3, 2006, for a bench trial on the remaining two Title VII claims for relief in plaintiff's third amended complaint: gender discrimination and retaliation. Plaintiff appeared personally and by and through his attorney, Danilo Aguilar; defendant appeared by and through its attorney, F. Matthew Smith.

At the conclusion of plaintiff's case in chief, defendant moved for judgment on partial findings, pursuant to Fed.R.Civ.P. 52(c).[1] The court granted the motion and indicated that these findings of fact and conclusions of law would follow.

This lawsuit proceeded to trial before the court on plaintiff's two remaining post-pretrial motions claims for relief: gender discrimination and retaliation under Title VII, 42 U.S.C. § 2000e. The gist of both claims for relief was that Barbara Moir who, during the relevant time periods, held various positions equal to or above plaintiff at Northern Marianas College (NMC). Plaintiff alleges that she discriminated against him because he is a male and retaliated against him for filing complaints against her with the College itself and the U.S. Equal Employment Opportunities Commission (EEOC). Plaintiff testified, as did Leonard "Butch" Wolfe, Jr., and Lino Santos (whose deposition testimony was read into the record). Plaintiff also entered into evidence numerous documents. Defendant also

---

[1]
> Rule 52(c) provides in full:
>
> Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under controlling law be maintained or defeated without a favorable ruling on that issue, or the court may decline to render any judgment until the close of all the evidence. Such judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

introduced several documents.

Findings of Fact

Plaintiff began his employment with defendant Northern Marianas College in June, 1996. He was originally hired as the Director of Apprentice Trades, but his program was later called Vocational Trades, a part of the Continuing Education program at NMC. His program was later placed in the department of Arts and Sciences, which was then overseen by Dr. Barbara Moir.

On October 28, 1998, plaintiff filed a "gender-based" EEO complaint with NMC Director of Human Resources, against Barbara Moir, who was then Vice President of Instruction. Plaintiff complained of her "past and present pattern of harassment of male employees at NMC" and her "direct harassment of me in my work here at NMC." Plaintiff concluded that he would wait for the next step in the process, which he assumed was an "intake meeting," at which time he would "provide evidence and make my complete statement for your records." Plaintiff's Ex. 4.

On March 9, 1999, plaintiff filed a "notification of grievances" with the president of the college (then Agnes McPhetres), "officially requesting an inquiry...into several incidents involving [Moir] and myself, which have been very disturbing, demoralizing and, possibly, contrary to BOR [Board of Regents] policy

and employee contractual rights and obligations. I regret the incidents have risen to a height of professional and personal intolerability, and remedial intervention is now necessary." Plaintiff then lists a number of items that he feels support his claim. None of the items complained of involves plaintiff's sex and most of them occurred *before* plaintiff's first EEO complaint against Moir. Plaintiff closed that he would "support the above allegations with testimony and additional proof, when necessary." Plaintiff's Ex. 9.

In a March 26, 1999, memo to the NMC Human Resources Director, plaintiff complains, as one of twelve "unresolved" grievances, that Moir has a bias against men and local participants in programs. Because the matters remain "unresolved" despite meetings with Moir and his immediate supervisor, and even though they had been presented to the College President and discussed by her appointed mediator, plaintiff wishes the matters reviewed by the Employee Appeals Committee. Plaintiff's Ex. 11.

On November 12, 1999, plaintiff agreed by his signature to a "Recommendation for Settlement - Grievance for Dr. Jack Angello," prepared by Kohne Ramon as Director of Human Resources Office and sent to NMC President Agnes McPhetres. Plaintiff agreed in the agreement that it would settle all pending matters, and he received a pay "one step increase for the new position of Director of Technical Trades/Special Projects," compensation for a portion of a class he

ceased teaching due to health problems, and "training on sexual harassment for both male and female employees of the College," for which the Director of the Human Resources Office indicated a desire to see "immediate action on the latter concern." The settlement agreement recognized plaintiff's concern that none of his prior actions be "used in any way to retaliate against him." Plaintiff's Ex. 14. Neither Dr. Moir nor any discrimination on the basis of sex directed to plaintiff individually were mentioned in the settlement memo.

On December 13, 1999, plaintiff sent a memo to NMC's Director of Human Resources noting the "amicable resolution" of his personnel grievance against NMC (not Moir). Plaintiff's Ex. 15.

On December 7, 1999, plaintiff sent a letter to an EEOC Investigator in Honolulu, Hawaii, noting the amicable resolution of his grievances and asking that his EEOC complaint be withdrawn. In the letter, plaintiff expresses his concern that the sexual harassment training has not yet been conducted and expresses his concern that retaliation might already have begun, since an evaluation that was supposed to have occurred some months prior had not yet been scheduled and that "some NMC administrators here at the college tried to adversely affect the attached agreement, and this rancor will surely carry over to next year." Plaintiff's Ex. 16.

On March 2, 2000, plaintiff signed another two-year contract with NMC. The contract provided that it could be terminated without cause upon sixty days'

written notice. Defendant's Ex. A, ¶ VII(C).

On March 9, 2001, plaintiff filed another grievance against Moir, accusing her of harming plaintiff's personal and professional life and wanting to know why "a beneficial program [the Pacific Rim Academy, *see infra* ]has been virtually beaten to death through the use of destructive rumors, a lack of middle-management support, and the apparent mean-spirited acts of academic sabotage." Plaintiff's Ex. 41. The acts of sabotage and lack of support were Moir's "intentional" omission of Audio/Visual classes for the Fall 2000 class schedule, her failure to attend a luncheon meeting set up by plaintiff and others, and Moir's "unilateral" decision to again omit the A/V classes, this time from the Spring 2001 class schedule. Plaintiff then acknowledges that the classes must be approved by the Academic Council before they can be included, but notes that the Academic Council "is chaired by [Moir's] sister." Plaintiff then mischaracterizes the earlier settlement by saying that it required "that B. Moir receive sexual harassment training...and I don't believe Ms. Moir has received her sexual harassment (against male workers) training." In the "Actions Requested" portion of the memo, plaintiff asks that the NMC President "re-visit the previous EEOC agreement and satisfy the stipulations, including a filing of a new EEO violation against Ms. Moir (repeat offender)." He also asks that no one "retaliate against J. Angello" and that NMC "reach a fair settlement with him." Plaintiff's Ex. 41.

On June 20, 2001, plaintiff sent a memo to the president of NMC, stating that as per Board of Regents policy, his grievance was to be administered "in a satisfactory and timely manner," which had not yet occurred, and asks to be advised of the President's intentions. Plaintiff's Ex. 58.

In an e-mail reply of July 2, 2001, Kohne Ramon stated that the President wished to meet with the parties, that Moir was then off-island but expected to return in two weeks, and asked plaintiff to provide documentation to support his claims of personal and professional harm. Plaintiff's Ex. 59.

On September 24, 2002, plaintiff and ten other NMC employees were terminated by the newly-installed NMC President, Kenneth E. Wright, as part of a major reorganization of the College. Plaintiff's Ex. 85. Wright noted that although he had not yet had time to assess plaintiff's work, "your peers and colleagues have had nothing but appreciation for your work at Northern Marianas College." In accordance with his contract, plaintiff was paid for the following sixty days, although his termination was to take effect immediately.

Plaintiff's Exhibit 100 is a copy of the decision of the NMC Employee Appeals Committee. None of the items originally asked by plaintiff to be considered by the Committee named Dr. Moir. The Committee's decision noted that at the first hearing, on August 27, 2002, President Wright had "suggested he be given time to meet with Dr. Angello to see if a resolution of his concerns could be

arrived at without going through the Appeals Committee. Dr. Angello agreed." The meeting between Wright and plaintiff was deemed unsuccessful, so the hearing was re-scheduled to November 26, 2002.

At the November 26, 2002, hearing, plaintiff presented a letter listing all the things he wanted addressed by the Committee, which included several new areas of grievance. Ultimately, the Appeals Committee concluded that it lacked jurisdiction to consider plaintiff's complaints, since he was no longer an employee. *Id.*

Conclusions of Law

Plaintiff may establish a prima facie claim of sex discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), by either direct or indirect (circumstantial) evidence. Mondero v. Salt River Project, 400 F.3d 1207 (9th Cir. 2005), relying in part on McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

Plaintiff can show by direct evidence that an employer (here, Moir as an employee of defendant College) discriminated against him because of his gender. Plaintiff presented no direct evidence that Moir discriminated against him personally, either because he is a male or for any other reason.

Plaintiff can also present indirect (circumstantial) evidence that (1) he was a member of a protected class, (2) that he applied for and was qualified for a position he sought, (3) despite being qualified, he was rejected, and (4) that after he was

rejected the position remained open and the employer continued to seek other applications from people with similar qualifications.

For a disparate treatment claim to be a claim of discrimination on the basis of sex, the claimant's sex must have "actually played a role in [the decisionmaking] process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 113 S.Ct. 1701 (1977), cited in Jackson v. Birmingham Bd. of Education, 125 S.Ct. 1497 (2005) (dissent). As stated in the statute itself: "[A]n unlawful employment practice is established when the complaining party demonstrates that...sex...was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

To establish a *prima facie* claim for retaliation under Title VII, 42 U.S.C. § 2000e-3(a), plaintiff must show, by a preponderance of the evidence:

1. That he engaged in a protected activity;

2. That defendant took an adverse employment action against him; and,

3. That there is a causal link between plaintiff's protected activity and the adverse action.

When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred.

Plaintiff offered no direct or circumstantial evidence to support either of his claims. When asked for specific examples of sex discrimination or retaliation, he

9

could offer none. Rather, his testimony was that he "got a general feeling of animosity from" Moir and discerned "tenseness" after he had filed his first EEOC complaint in the Fall of 1998. He also felt that her "body movements" showed she took pleasure in causing the Vocational Trades department (presumably as plaintiff's alter ego) to suffer. Plaintiff "came to believe" that questions about his post-secondary teaching experience totals were the responsibility of Moir. When factual discrepancies in his various applications regarding his post-secondary teaching experience were pointed out to him during trial, plaintiff attributed all of them to the "severe stress" he was under when he filled them out. Also, even though he had been told by Jack Sablan that there was no funding for the Pacific Rim Academy that he wished to commence, plaintiff "felt there was some other reason classes were stopped." At every turn, plaintiff perceived setbacks to his programs as attributable exclusively to Dr. Moir's influence or behind-the-scenes machinations, although he acknowledged that during most of the relevant time she had no direct supervisory control over him or his program. There was no evidence that, when she was briefly the interim president of the College, she took any action directly against him or his program in retaliation for his EEO complaints against her. Further, despite acknowledging that his tendency to document everything might sometimes be a burden to others, plaintiff was unable to document facts about his own teaching experience and blamed "stress" for contradictory claims. After plaintiff

acknowledged that he was interviewed for positions at NMC after he had been terminated, he said the interviews were only conducted so NMC could "cover themselves." When plaintiff asked why Moir's name rarely appears in any of his early grievances or the settlements, he says that "everybody knew" that she was who they were talking about. Finally, plaintiff admitted that Moir never gave him a bad evaluation, or demoted him, or instituted any disciplinary action against him, which he attributed to her not having any reason for doing so. Plaintiff presented no evidence that Moir subjected him to, or was in a position to subject him to, gender discrimination, disparate treatment in the workplace, or a hostile work environment.

Witness Wolfe could offer no direct evidence of gender discrimination against plaintiff by Moir. He observed "just tension" between the two of them, and felt that she did not want to deal with either of them and just wanted to "push her weight around." He testified that he met with Jack Sablan "plenty of times" about the Pacific Rim Academy program (PRA)[2] but was always told by Sablan that there was no funding for, or interest in, PRA. Wolfe testified that after two years of

---

[2] Witness Wolfe is a noted sound effects editor, having won many awards in his field of expertise. He and plaintiff had met, discovered that they grew up close to each other, and, as their friendship grew, began discussing Wolfe's concern that sound effects work was being outsourced by Hollywood to Asian countries, and that perhaps a local program could be started to teach young people the skills and technology, perhaps leading to the Commonwealth becoming a site for future work.

unkept promises from every quarter, he abandoned the project with NMC.

Lino Santos' deposition testimony revealed that he felt the main problem was that there was no support for the vocational trades program from those in positions of responsibility at NMC. He could not recall Moir ever saying anything bad to plaintiff or doing anything bad to him. He testified that he "sort of felt" she did not like the program, even though she said she did. He testified that plaintiff told him he might leave the program, although he did not say why, and Santos did not want to lose him because he felt plaintiff had always been helpful to him and the program. He testified he felt Moir continually showed a negative attitude against the vocational trades program, but not against plaintiff, and that he never saw or heard anything suggesting Moir did not like plaintiff.

In conclusion, after two days of trial, the court was left with the indelible impression that plaintiff's perception of events found no support in the admissible evidence. A review of all the testimony and documents demonstrates that, when finally given the opportunity to prove his allegations, he could not make out a *prima facie* case. Accordingly, defendant's motion for judgment on partial findings was granted.

The court did not, and need not, address plaintiff's contention that he was entitled to Commonwealth civil service protections, despite the express language of

his contract that he could be terminated without cause.

Costs are awarded to defendant, pursuant to 28 U.S.C. § 1920.

DATED this 6th day of October, 2006.

_____
DAVID A. WISEMAN
Judge